Opinion of Hie court delivered by
Judge Haywood.—
David Beatty died leaving a will, and made the defendants his executors; and therein, amongst other things, made the following devise and bequest: “I will and bequeath that the plantation I now live on be sold by public or private sale to the best advantage, and the proceeds thereof be laid out in land in the Indiana Territory, as well situated as can be procured, and the right thereof vested in my negroes, which I now own, viz: (naming them,) each or all of them with their increase, to whom I give their entire freedom, and the settling of them on the above named land, under the direction of my executors,” &c.
Ann Hope, the sister of the deceased, claims the ne-groes as his next of kin, and his lands as heir at law. The county court of Davidson, that being the county where Beatty resided at the time of his death, refused, when applied to for the purpose, to emancipate the ne-groes, and a decree was made in the present case, that twelve months should be allowed to Johnson to procure their emancipation. He applied to the Legislature, who then passed an act authorizing any circuit court to which application might be made, to receive and consider of the *124 petition for emancipation, and to grant it or not, as they (jeem proper. The circuit court for the county of Sumner was applied to, and granted the petition upon the terms prescribed by law, and the negroes were carried by Johnson to the state of Indiana, where they now are, emancipated and free. Johnson then sold the land, directed by the will to be sold for purchasing another tract in Indiana, for their maintenance. And the question now is, whether such power given to Johnson for such purpose was a good and legal power; which general question is subdivided by the argument into two more minute ones. First, in whom the land vested till the sale. Secondly, whether the trust did not fail for want of persons capable to take it, when the testator died.
First: Did the land vest in Johnson, so far as regards the legal estate in fee ? The land was not given to him to use, but he was directed to sell. The legal estate did not vest in him, but a power to sell; and when he sold by virtue of the power, and conveyed by it a fee, the purchaser was in by and from the testator, by a title anterior to that which came to the heir by descent, and this puts an end to the claim of the heir, unless the power be void, it being for some illegal purpose. To provide for the subsistence of slaves now in being, who may hereafter become free, is not against any law; for those who are now slaves may become free by our laws of 1777, ch. 6, and 1801, ch. 27, by the means and for the causes and motives therein specified; and to provide for their maintenance w'hen free, must be as lawful as it is to make them free. The purpose then is not illegal.
Secondly: Did the trust fail for want of persons to take it? Suppose the direction had been to purchase land in Indiana, for the use and benefit of a child of a free person, which should be born in the lifetime of these negroes, and such child should be born in their lifetime; the trust would vest in him, such birth being within the time limited to prevent perpetuities. So here, if the negroes be made free at all, it must necessarily be in their lifetime, and the estate will not be unalienable, waiting for the trust to *125 attach beyond the time limited, and so is not void as tending to lock up the estate in perpetual seclusion from the purposes of commercial enterprise. If the trust be not void on account of its tendency to a perpetuity, then the objects of the testator’s bounty were capable to take in reasonable time after his death, though not capable at the time of his death and before emancipation: and there is moré reason that they should take according to the will of the testator, than that the heir should take against his express purpose that she should not.
But it is said that the property vested in Ann Hope, and could not afterwards be taken from her. Answer: It vested in her sub modo, as it does by descent to a more remote heir, until a nearer be born. As, suppose it vest in the brother of the deceased, and six or eight months afterwards, the wife of the deceased is delivered of ‘ an heir. So here, the land vests in the heir till a purchaser come into esse under the power, and then in the purchaser, immediately, by and from the ancestor.
Again, it is said, that having vested in Ann Hope, it could not be taken from her by an act of the Legislature. Answer: The Legislature did not in the least degree interfere with the power, but left it precisely as it was at the death of the testator. Again, it is said, that the Legislature had no right to qualify the slaves to become capable of taking, when, but for the Legislature, they would have remained incapable. Answer: They were capable to be made free by the existing laws: they did not derive the capacity from an after-act of the Legislature. The Legislature only provided a remedy for an existing right. It is riot unconstitutional to provide a new or additional remedy for a just right already in being, and which would be lost and destroyed if no remedy were provided. Deeds not registered in time, upon this ground, may be admitted to registration by a new act of the Legislature.
Again, it is said, that the county court decided against the petition, and that thereby the negroes were perpetually barred and concluded from presenting any other petition to any other tribunal. Answer: That was not re *126 lied on by way of defence to the petition in the circuit court, or if it were relied on, that court decided against iÍ, and the complainant did not appeal, and (hereby is concluded from insisting on it as a bar. So (here is conclusion against conclusion, which puts the matter at large.
Balckfor complainant.
Grundy and W. L. Brown for defendant.
Again, it is said, that slaves cannot be emancipated by will, this not being one of the modes pointed out by the act of 1777, ch. 6, or of 1801, ch. 27. Answer; A particular mode is not specified by either act. As between the master and slave, the intent and volition of the master to emancipate may be made known by any species of instrument that will completely evince it; and then nothing more is wanted but the assent of the state expressed by its organ, the court, which may show its determination, by reporting on the petition and certifying the same, and by causing both the petition and report to be filed amongst the records of the court. The mind and desire of the owner may be as well expressed by will, as by deed or any other instrument; and when it is made known by his will, the duty of his executor is to use such legal means, as may be effectual for the completion of his purpose. Why not authorize him to procure emancipation by legal means, as well as to procure the name of a child to be altered, in order that he may be entitled to take a legacy which is given to him, whenever his new name shall be legally'given and assumed?
One thing more I will add. If the power be void, as contended for by the complainant’s counsel, because of the illegality of its object, the lands in question could not be legally sold under it. They yet belong to Anne Hope. She may recover at law. Why then come here claiming the proceeds of the sale, by which she admits its legality, at the same time that she says it is void in law and in equity? Dismiss the bill.
Bill dismissed.