# IN THE SUPREME COURT OF TENNESSEE
## AT MEMPHIS
November 9, 2004 Session

## FRANK FETZER MILLS, JR., ET AL. v. LUIS L. WONG, M.D., ET AL.

**Appeal by permission from the Court of Appeals, Western Section**
**Shelby County Circuit Court**
**No. 300304 T.D.    Robert A. Lanier, Judge**

---

**No. W2002-02353-SC-R11-CV - Filed February 16, 2005**

---

The plaintiffs in this medical malpractice action filed their complaint approximately three weeks after the three-year medical malpractice statute of repose, Tenn. Code Ann. § 29-26-116(a)(3) (1980), had expired.  The defendants moved to dismiss the action as time-barred.  In response, the plaintiffs argued that their action should not be time-barred because the primary plaintiff was mentally incompetent during most of the repose period.  Specifically, the plaintiffs contended that due process requires tolling of the statute of repose during the period of a plaintiff's mental incompetency. In support of their contention, the plaintiffs relied on <u>Seals v. State</u>, 23 S.W.3d 272 (Tenn. 2000), and other precedents which provide for tolling of the Post-Conviction Procedure Act statute of limitations, Tenn. Code Ann. § 40-30-102(a) (2003), on the basis of a petitioner's mental incompetency.  The lower courts granted summary judgment in favor of the defendants. We affirm. We hold that due process does not require tolling of the medical malpractice statute of repose during the period of a plaintiff's mental incompetency.  The legislature has the constitutional power to place reasonable temporal limitations on rights of action in tort.  By contrast, a post-conviction petition, despite its procedurally civil nature, is available only to a person who is in custody following a criminal conviction and sentence; such a petition thus implicates life and liberty interests in a way that materially differentiates it from civil actions.  Therefore, the precedents which require tolling for mental incompetence in the context of post-conviction petitions are inapposite to questions of tolling statutes of repose in civil tort actions.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR. and JANICE M. HOLDER, J.J., joined.  WILLIAM M. BARKER, J., did not participate.

Richard J. Myers, Memphis, Tennessee, for the appellants Frank Fetzer Mills, Jr. and Rebecca Smith Mills.

William H. Haltom, Jr. and Joseph M. Clark, Memphis, Tennessee, for the appellee Charter Lakeside Behavioral Health System, Inc.

Robert B.C. Hale, and John T. Moses, Memphis, Tennessee, for the appellees Janet K. Johnson, M.D., Yvette Marion and Miriam Johnson, as co-executors of the estate of Janet K. Johnson, M.D., and Kenneth F. Tullis, M.D.

Michael L. Robb, and Kevin Baskette, Memphis, Tennessee, for the appellee John F. O'Connell, M.D.

## OPINION

### I. Factual and Procedural Background

Frank Fetzer Mills, Jr. ("Mr. Mills") was suffering from depression, insomnia and other mental and physical ailments. On November 17, 1994, he sought professional care at defendant Charter Lakeside Behavioral Health System, Inc. ("Charter"). Mr. Mills was admitted to one of Charter's treatment facilities where he was hospitalized at least until November 27, 1994 and possibly until December 3, 1994. He subsequently received care at one of Charter's rehabilitation facilities until December 29, 1994. During this period, defendants John F. O'Connell, M.D. ("Dr. O'Connell"), Kenneth F. Tullis, M.D. ("Dr. Tullis"), and Janet K. Johnson, M.D. ("Dr. Johnson") provided Mr. Mills with psychiatric and medical care. After his treatment at Charter ended, Mr. Mills continued to experience mental and neurological problems such as depression, speech abnormality, decreased physical coordination, headaches and tremors. When treatment by other physicians failed to improve his condition, in January 1997, he consulted Lee Stein, M.D. ("Dr. Stein"), who performed upon Mr. Mills a general physical examination and a variety of tests. On February 7, 1997, Dr. Stein performed an ophthalmological exam which revealed for the first time that Mr. Mills' condition was caused by Wilson's Disease, a treatable genetic disorder which ultimately proves fatal if left untreated.[1] Shortly after this diagnosis, Mr. Mills obtained specialized treatment for the disease.

On January 21, 1998, Mr. Mills and his wife, Rebecca Smith Mills ("Mrs. Mills") (collectively the "plaintiffs"), filed a medical malpractice suit against Charter and Drs. O'Connell, Tullis, and Johnson[2] (collectively the "defendants"), alleging that the defendants negligently failed

---

[1] Wilson's Disease precludes one's body from excreting copper, with the result that copper accumulates in the body thereby causing serious internal, neurological, and psychiatric problems.

[2] Dr. Johnson died on November 1, 1998. Subsequently, the co-executors of her estate,
(continued...)

-2-

to discover that Mr. Mills was suffering from Wilson's Disease.[3] The plaintiffs alleged that the defendants' failure to discover the disease in 1994 caused Mr. Mills to suffer irreversible damage to his brain and to certain internal organs which could have been reduced or avoided by a proper diagnosis. Mrs. Mills also claimed that she suffered damages such as loss of her husband's services and consortium.

The defendants filed motions to dismiss the plaintiffs' claims, maintaining that the plaintiffs' initial complaint was not filed within the three-year statute of repose for medical malpractice actions. See Tenn. Code Ann. § 29-26-116(a)(3) (1980). Considering the record in a light most favorable to the plaintiffs, the last date on which the defendants could have committed a negligent act or omission as to Mr. Mills was December 29, 1994, their final day of treating him. The plaintiffs did not file their initial complaint until January 21, 1998, approximately three years and three weeks later.

In response to the motions to dismiss, the plaintiffs supplied affidavits of experts who concluded that, as a result of Wilson's Disease, Mr. Mills had been mentally incompetent from at least November 17, 1994 until approximately July 1997. The plaintiffs argued that due process requires the medical malpractice statute of repose to be tolled for the period of Mr. Mills' mental incompetency. The plaintiffs relied upon precedents which have tolled on the basis of mental incompetency the one-year statute of limitations for post-conviction petitions, contending that these precedents should apply in the present case.

Treating the motions to dismiss as motions for summary judgment, the trial court granted summary judgment in favor of the defendants. The Court of Appeals affirmed. Following this Court's decision in Penley v. Honda Motor Co., 31 S.W.3d 181 (Tenn. 2000), the Court of Appeals held that there is no statutory basis for tolling the medical malpractice statute of repose during the period of Mr. Mills' mental incompetency. The Court of Appeals further held that due process does not require tolling of the medical malpractice statute of repose, stating:

> While post-conviction relief may be characterized as a civil action, all the substantive rights involved are those stemming from a criminal action and protected by rules of criminal procedure. This Court is not willing to extend the due process analysis . . . to a case involving the civil medical malpractice statute of repose.

---

[2](...continued)
Yvette Marion and Miriam Johnson ("estate of Dr. Johnson"), were substituted for Dr. Johnson as parties to this litigation.

[3]In their complaint, the plaintiffs included other defendants who are not relevant to this appeal.

Given these holdings, the Court of Appeals found to be moot the question of whether the statute at issue in the Post-Conviction Procedure Act cases is a statute of limitations or of repose. We granted the plaintiffs' application for permission to appeal.

## II. Analysis

The primary issue now before us is whether due process requires tolling of the medical malpractice statute of repose during the period of a plaintiff's mental incompetency. In order to resolve this question, we must first address preliminary statutory matters.

### A. Medical Malpractice Statute of Repose

We begin by describing the medical malpractice statutes of limitations and repose. Tennessee Code Annotated section 29-26-116(a)(1)-(2) (1980) provides that "[t]he statute of limitations in malpractice actions shall be one (1) year . . . ," except that "[i]n the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." This statute places a temporal procedural boundary on the bringing of a medical malpractice action. See Cronin v. Howe, 906 S.W.2d 910, 913 (Tenn. 1995) ("[S]tatutes of limitation are merely procedural, extinguishing only the remedy.").

However, the statute of repose sets an absolute limit on the time in which a plaintiff may bring a medical malpractice action. This statute provides:

> *In no event shall any* such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant[,] in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Tenn. Code Ann. § 29-26-116(a)(3) (1980) (emphasis added). As with the Tennessee Products Liability Act statute of repose, Tenn. Code. Ann. § 29-28-103 (2000), the emphasized language expresses a legislative intent to place an absolute three-year bar beyond which no medical malpractice right of action may survive. See Penley v. Honda Motor Co., 31 S.W.3d 181, 185 (Tenn. 2000). The running of the statute of repose thus has a substantive effect. See Cronin, 906 S.W.2d at 913 ("[S]tatutes of repose are substantive and extinguish both the right and the remedy . . . .").

### B. Statutory Tolling of the Statute of Repose

By statute, the absolute temporal bar imposed by the medical malpractice statute of repose may be tolled only in exceedingly limited circumstances. The statute of repose itself expressly provides for tolling on the basis of fraudulent concealment, Tenn. Code Ann. § 29-26-116(a)(3), but

it says nothing about tolling on the basis of mental incompetency. The absence of an express tolling provision for mental incompetency when tolling is expressly provided for on another ground indicates legislative intent not to provide for tolling on the basis of mental incompetency. See Penley, 31 S.W.3d at 185-86.

Moreover, this Court held in Penley that the general legal disability statute provided in Tennessee Code Annotated section 28-1-106 (1980) does not serve to toll statutes of repose on the basis of mental incompetency. 31 S.W.3d at 186-89. The legal disability statute states:

> If the person entitled to commence an action is, at the time the cause of action accrued, either under the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

Tenn. Code Ann. § 28-1-106 (1980). In Penley, we explained that "the references to the accrual and the bringing of a cause of action indicate that this section is only applicable to extend the running of a statute of limitations, and we will not interpret the legal disability statute to give it effect beyond the fair import of its terms." 31 S.W.3d at 186. Thus, we clearly refused to extend the legal disability statute to allow for tolling of the statute of repose on the basis of mental incompetency. Id. at 188. Relying on Penley, the Court of Appeals in this case held correctly that "no . . . statutory exception exists for [tolling] the statute of repose" on the basis of mental incompetency.

### C. Constitutional Tolling of the Statute of Repose

Given the lack of any statutory basis for tolling the medical malpractice statute of repose for mental incompetency, the plaintiffs in this case have advanced a constitutional basis for tolling. Specifically, they contend that due process requires tolling of the medical malpractice statute of repose during the period of Mr. Mills' mental incompetency. The plaintiffs accurately point out that we did not squarely address this constitutional issue in Penley.

It is correct to say that the plaintiffs' vested right of action for medical malpractice in this case enjoys constitutional protection. Mr. Mills' cause of action accrued in February 1997, when the plaintiffs first discovered that he had Wilson's Disease. A vested right of action in tort is a cause of action which has accrued, thereby becoming presently enforceable. See Jones v. Morristown-Hamblen Hosp. Assoc., Inc., 595 S.W.2d 816, 820-21 (Tenn. Ct. App. 1979). Vested rights of action in tort may be classified as constitutionally-protected property interests. "[A] vested right of action is as much property as are tangible things . . . and enjoys the full protection of the due process clauses of the Federal and State Constitutions." Morris v. Gross, 572 S.W.2d 902, 905 (Tenn. 1978); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982) ("[A] cause of action is a species

of property protected by the Fourteenth Amendment's Due Process Clause.").[4]  The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."  The Law of the Land Clause of the Tennessee Constitution correspondingly states that no person "shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."  Art. I, § 8.  Analysis under the Fourteenth Amendment and the Law of the Land Clause are to be treated synonymously, Daugherty v. State, 393 S.W.2d 739, 743 (Tenn. 1965), although "[i]n the interpretation of the Tennessee Constitution, this Court is always free to expand the minimum level of protection mandated by the federal constitution," Doe v. Norris, 751 S.W.2d 834, 838 (Tenn. 1988) (citing Miller v. State, 584 S.W.2d 758, 760 (Tenn. 1979)).

Although common law rights of action in tort receive constitutional protection, they are not fundamental rights which demand heightened due process protection under the federal and Tennessee constitutions.  See Crier v. Whitecloud, 496 So. 2d 305, 310 (La. 1986) ("[T]he right to recover in tort is not a fundamental right . . . ."); King-Bradwell P'ship v. Johnson Controls, Inc., 865 S.W.2d 18, 21-22 (Tenn. Ct. App. 1993) (holding that application of Tennessee's products liability statute of repose "involve[d] neither a fundamental right nor a suspect class."); see also United States v. Kras, 409 U.S. 434, 445 (1973) (applying rational basis review to economic legislation); Klein v. Catalano, 437 N.E.2d 514, 522 (Mass. 1982) ("[W]e see no basis for treating a law that abrogates a tort remedy differently from any other law that regulates economic activity" and which thus receives rational basis review.).  As the United States Supreme Court has explained, property interests "are not created by the Constitution.  Rather[,] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).

Consequently, the Tennessee General Assembly has the sovereign power prospectively to limit and even to abrogate common law rights of action in tort as long as the legislation bears a rational relationship to some legitimate governmental purpose.  See Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 83-84, 88 n.32 (1978) (applying rational basis review to economic legislation and stating that no person has a vested interest in the common law itself); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16 (1976) ("[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations."); Silver v. Silver, 280 U.S. 117, 122 (1929) ("[T]he Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object."); Sutphin v. Platt, 720 S.W.2d 455, 457 (Tenn. 1986) ("If the court is able to conceive of a rational basis for [a] statute that is reasonably related to a legitimate state purpose, the court cannot further question the wisdom of the legislation.").

---

[4]Some courts use the terms "cause of action" and "right of action" interchangeably.  See 1 Am. Jur. 2d *Actions* § 40 (2004).

Absent any retroactive application,[5] once an applicable repose period has run, a rationally-based statute of repose validly extinguishes not only unaccrued causes of action, but also causes of action which have already accrued and vested as rights. As stated above, "the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." Silver, 280 U.S. at 122. In Tennessee, the common law right of action for medical malpractice is inherently limited from its inception by Tennessee Code Annotated section 29-26-116(a) (1980), which provides that "[i]n no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred . . . ." The property right which may vest in a plaintiff is thus *by its very definition* a right which may exist only for a limited time. Cf. Martinez v. California, 444 U.S. 277, 282 n.5 (1980) ("[T]he [statutory] immunity defense, like an element of the tort claim itself, is merely one aspect of the State's definition of that property interest."); Ferri v. Ackerman, 444 U.S. 193, 199 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim . . . ."); Crier, 496 So. 2d at 308 ("[A] state has the right to fashion and limit the causes of action that it recognizes. . . . As a result, persons who do not file suit within th[e] time limit [provided by the Louisiana medical malpractice statute of repose] have no cause of action and thus no vested property right in bringing suit.").

In reasonably limiting a tort right of action via a statute of repose, the legislative process provides all the process that is due. See Logan, 455 U.S. at 432-33 ("[T]he [statutory] grant of immunity [from tort claims] arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process . . . . [T]he legislative determination provides all the process that is due.") (citations omitted); cf. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 486-87 (1988) (noting that a state's involvement in the self-executed running of a statutory limitations period falls short of the kind of state action required to implicate procedural due process). The Tennessee General Assembly itself has the power to weigh and to balance competing public and private interests in order to place reasonable limitations on rights of action in tort which it also has the power to create or to abolish. Cf. Texaco, Inc. v. Short, 454 U.S. 516, 526 (1982) ("We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.").

Notwithstanding, the plaintiffs contend that our precedents which hold that due process requires tolling of the Post-Conviction Procedure Act statute of limitations on the basis of mental incompetency are applicable to civil tort actions. Specifically, the plaintiffs attempt to rely upon Burford v. State, 845 S.W.2d 204 (Tenn. 1992), Seals v. State, 23 S.W.3d 272 (Tenn. 2000), and their progeny as support for their position. In order to decide whether these precedents should apply in the case at bar, it is instructive to review their relevant holdings.

---

[5]The disturbance of vested rights through retroactive legislation, see, e.g., Morris v. Gross, 572 S.W.2d 902 (Tenn. 1978), implicates a different constitutional question which is not at issue in this case.

Under the Post-Conviction Procedure Act, a person "in custody under a sentence of a court of this state," Tenn. Code Ann. § 40-30-102(a) (2003) (formerly § 40-30-202(a)), is given the opportunity to mount a collateral attack on a criminal conviction or sentence when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2003). The Post-Conviction Procedure Act includes a one-year statute of limitations[6] for bringing a claim. See Tenn. Code Ann. § 40-30-102(a) (2003) (formerly § 40-30-202(a)).[7] In Seals, this Court held that within the context of post-conviction proceedings, due process may require tolling of the statute of limitations on the basis of a petitioner's mental incompetency. 23 S.W.3d at 279; see also Burford, 845 S.W.2d at 209-10 (holding that the post-conviction statute of limitations shall be tolled when due process so requires).[8] The constitutional concern expressed in Seals has been summarized as follows: "While rejecting a facial challenge to the constitutionality of [Tennessee Code Annotated section 40-30-102(a)], we concluded that its application may violate due process if it denies mentally incompetent petitioners a reasonable opportunity to raise a claim in a meaningful time and in a meaningful manner." State v. Nix, 40 S.W.3d 459, 462 (Tenn. 2001). Seals further explains:

---

[6]Given our holding herein, see infra, we need not determine whether Tennessee Code Annotated section 40-30-102 is technically to be characterized as a statute of limitations or a statute of repose.

[7]The statute of limitations provides:

Except as provided in subsection (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or in equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided for in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Tenn. Code. Ann. § 40-30-102(a) (2003) (formerly § 40-30-202(a)).

[8]The Burford decision concerned a prior version of the Post-Conviction Procedure Act statute of limitations. See Tenn. Code Ann. § 40-30-102 (1990), *repealed by* Post-Conviction Procedure Act, 1995 Tenn. Pub. Acts ch. 207, §1; Burford, 845 S.W.2d at 206.

In determining what procedural protections a particular situation demands, three factors must be considered: (1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute safeguards; and finally, (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

23 S.W.3d at 277 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976) and Phillips v. State Bd. of Regents, 863 S.W.2d 45, 50 (Tenn. 1993)).

The plaintiffs in this case argue that divestiture of their tort claim via application of the medical malpractice statute of repose deprives them of a constitutionally-protected property right without fair process. They compare their situation to that of a mentally-incompetent prisoner who has been deprived of a constitutional liberty interest without the opportunity to be heard at a meaningful time and in a meaningful manner. We find this comparison to be inapposite.

Although post-conviction petitions are procedurally civil in nature, Watkins v. State, 903 S.W.2d 302, 305 (Tenn. 1995), *superseded by* Tenn. Code Ann. § 40-30-102, the opportunity to bring a post-conviction petition applies only where "a person in custody under a sentence of a court of this state" seeks relief from a criminal sentence or conviction, Tenn. Code Ann. § 40-30-102(a). Post-conviction petitions thus necessarily implicate fundamental due process interests in life or in freedom from bodily restraint in a way that materially differentiates such petitions from civil tort claims.[9] As the Court of Appeals noted, "While post-conviction relief may be characterized as a civil action, all the substantive rights involved are those stemming from a criminal action and protected by rules of criminal procedure." "In criminal litigation, where an alleged infringement of a constitutional right often affects life or liberty, conventional notions of finality associated with civil litigation have less importance." Burford, 845 S.W.2d at 209 (citing Sanders v. United States, 373 U.S. 1, 8 (1963) ("Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.")). Our precedents from the post-conviction procedure context are thus inapplicable to questions concerning the tolling of civil statutes of repose.

In light of the foregoing analysis, we hold that due process does not require tolling of the medical malpractice statute of repose during the period of a plaintiff's mental incompetency. We thus affirm the Court of Appeals, which refused "to extend the due process analysis used in *Seals* to a case involving the civil medical malpractice statute of repose." Although a rule which extinguishes medical malpractice rights of action even though a plaintiff was mentally incompetent may be harsh, it is fully within the constitutional power of the legislature so to provide, and thus it

_____

[9]In pointing out this distinction, we in no way disturb our prior holding that the opportunity to bring a petition for post-conviction relief is not itself a fundamental constitutional right. See Seals, 23 S.W.3d at 277-78; Burford, 845 S.W.2d at 207.

is not our place to debate its wisdom. See Harrison v. Schrader, 569 S.W.2d 822, 828 (Tenn. 1978). As Harrison held, the Tennessee General Assembly had a rational basis for enacting the medical malpractice statute of repose. Id. at 824-28. Just as the medical malpractice statute of repose validly extinguishes undiscovered causes of action which have yet to accrue, it also validly extinguishes even accrued and vested rights of action. See supra.

### D. Summary Judgment

Summary judgment requires a demonstration that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). Because the record in this case, viewed in the light most favorable to the plaintiffs, Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998), establishes that the plaintiffs filed suit approximately three years and three weeks after the last date on which the defendants could possibly have committed negligence, the plaintiffs' right of action is barred by the three-year statute of repose provided in Tennessee Code Annotated section 29-26-116(a)(3) (1980). Therefore, as to the plaintiffs Mr. and Mrs. Mills,[10] we affirm summary judgment in favor of the defendants Charter, Dr. O'Connell, Dr. Tullis and the estate of Dr. Johnson.

### III. Conclusion

For the reasons explained herein, we hold that due process does not require the three-year medical malpractice statute of repose to be tolled during the period of a plaintiff's mental incompetency. In this regard, we affirm the judgment of the Court of Appeals. Based on this holding, we also affirm summary judgment as to the plaintiffs Mr. and Mrs. Mills in favor of the defendants Charter, Dr. O'Connell, Dr. Tullis and the estate of Dr. Johnson. Costs of this appeal are taxed to the plaintiffs, Mr. and Mrs. Mills, for which execution may issue if necessary.

FRANK F. DROWOTA, III, CHIEF JUSTICE

---

[10]Our holding that mental incompetency does not toll the medical malpractice statute of repose renders moot the question of whether Mrs. Mills' individual claims must be treated separately from those of Mr. Mills.